# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| YONAS GHIRMAY | CIVIL ACTION |
|---|---|
| VERSUS | NO: 07-1826 |
| BERHANE TSEGIA d/b/a<br>SEMBEL MULTIMEDIA PRODUCTION | SECTION: "C" (2) |

## ORDER & REASONS[1]

This matter is before the Court on Plaintiff's motion for judgment by default. Rec. Doc. 23. Having reviewed the record, memoranda of counsel, and the law, the Court has determined that default judgment for Plaintiff is appropriate. The Court reserves its right to award actual damages pending further briefing on the fair market value of a reasonable license fee in regards to songs and tracks to be used in a DVD.

## I. FACTUAL BACKGROUND

Plaintiff, a musician and songwriter, filed a complaint for copyright infringement, unfair trade practices, and damages against Defendant, Sembel Multimedia Production. Rec. Doc. 1 at 1-2. Plaintiff claims that Defendant unlawfully reproduced several of his alleged copyrighted songs and master recordings in the film "Men Efelt." *Id.* at 1-3. The songs and master recordings can be found on Plaintiff's album "Instrumental Arrangements from Eritrea," which was first published in 2002. Rec. Doc. 1-2 at 3. These songs and master recordings, however, were not registered until July 8,

---

[1]Francisco A. Besosa-Martínez, a third-year student at Tulane University Law School, assisted in the research and preparation of this opinion.

1

2005. *Id.* at 4-5. On the same day his work was registered, Plaintiff notified Defendant of its copyright infringement. *Id.* at 6-7. Default was entered on February 22, 2008. Rec. Doc. 12. Plaintiff now seeks a judgment of default with actual damages for the unauthorized use of the songs and master recordings in the amount of $30,000, and attorney's fees in the amount of $10,000 as permitted under 17 U.S.C. § 505. Rec. Doc. 17-2 at 3. Plaintiff arrives at the "actual damages" figure in two ways: first, he alleges that industry standards dictate that songs and tracks are licensed for DVDs at ten to twenty-five cents each, per DVD. Rec. Doc. 23-2 at 6. Using the lower end of ten cents, Plaintiff alleges that he is owed 20 cents per track and song used in each DVD. Rec. Doc. 23-2 at 6. Estimating that the Defendant has sold 15,000 DVD's, Plaintiff reasons that he is owed $30,000 in damages; alternatively, Plaintiff states that, had he been asked, he would have licensed the songs and tracks to Defendant for $1,500 for each portion, for a total of $3,000 per song and $30,000 for ten uses. Rec. Doc. 23-2 at 6-7.

## II. APPLICABLE LAW

### a. ENTERING DEFAULT JUDGMENT

On motion for default judgment, the Court accepts the well-pleaded allegations of facts of the complaint. *Nishimatsu Construction Co. v. Houston National Bank*, 515 F.2d 1200 (5th Cir. 1975). Factual allegations will only be deemed not well-pled in "very narrow, exceptional circumstances." *Trans World Airlines, Inc. v. Hughes*, 308 F.Supp. 679, 683 (S.D.N.Y. 1969), *modified on other grounds*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363

(1973). Furthermore, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. Rule 54(c). Thus, while all other final judgments should award the relief to which parties are *entitled* to, under default judgment parties may only be granted the relief they have *demanded* in the pleadings. *Id.*

### b. FINDING COPYRIGHT INFRINGEMENT

It is well-settled Fifth Circuit precedent that, "[t]o establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004) (*referring to Gen. Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004)). *See also Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995) *(citing Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 387 (5th Cir. 1984)). Moreover, to establish the second element of this two-part test, the plaintiff must show: "(1) factual copying and (2) substantial similarity." *Positive Black Talk*, 394 F.3d at 367 (*referring to Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003).

For its part, factual copying "can be proven by direct or circumstantial evidence." *Bridgmon*, 325 F.3d at 576. Because direct evidence is a rarity in copyright cases, however, factual copying may be adduced from "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Positive Black Talk*, 394 F.3d at 368 (quoting Peel & Co. v. Rug Market, 238 F.3d 391, 394 (5th Cir. 2001). These two elements have an inverse relationship where a high degree showing of one effectively reduces the degree to which the

3

other may need to be proven. *See Positive Black Talk*, 394 F.3d at 371-72. "In fact, a plaintiff may establish factual copying without any proof of access 'when the similarity between plaintiff's and defendant's works is sufficiently striking such that the trier of fact may be permitted to infer copying on that basis alone." *Id.* at 372, fn. 10 (*quoting* 4 NIMMER, § 13.02[B], at 13-26).

In regards to "probative similarity," "the ultimate issue [ . . .] is whether the similarities between the two works suggest that the later-created work was factually copied." *Id.* at 369. To determine this, the fact-finder "must consider the whole of the first work (including both copyrightable and non-copyrightable parts) and the whole of the second work and then compare the two works, looking for any similarities between their constituent parts." *Id.* at 369-70. Thus, "two works are probatively similar if [. . .] any similarities between the two works (whether substantial or not) [. . .] would not be expected to arise independently in the two works[.]" *Id.* at 370.

Once factual copying has been proven, the fact-finder must then determine whether the works are substantially similar. It is during this step that it must be determined "whether the factual copying [. . .] is legally actionable." *Id.* (*referring to Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 & n.4 (5th Cir. 1994)). In *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997), the Fifth Circuit stated that "[t]o determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar'." *Id.* This is an inquiry that is to be determined by the fact-finder, who examines the works in question. *See Positive Black Talk*, 394 F.3d at 374.

### c. CALCULATING DAMAGES

One of the principal objectives of Copyright Law is to enable creators to earn a living by selling or licensing their copyrighted work to others. *See* U.S. Const. Art. I, § 8, cl. 8. Thus, if the above inquiry establishes copyright infringement, the plaintiff may be entitled to actual or statutory damages, and attorney's fees. Under 17 U.S.C. § 504, "an infringer of copyright is liable for [. . .] (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); *or* (2) statutory damages, as provided by subjection (c)." Furthermore, 17 U.S.C. § 505 states that, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." The court "may also award reasonable attorney's fee to the prevailing party as part of the costs." *Id.*

In regards to "actual damages," there is large acceptance that this term should be construed broadly in order to favor victims of infringement. *See On Davis v. The GAP, Inc.*, 246 F.3d 152, 164 (2d Cir. 2001); *see also* William F. Patry, *Copyright Law and Practice* 1167 (1994); 4 *Nimmer* § 14.02[A], at 14-12. Actual damages "are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Polar Bear Prod.'s, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (*quoting McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003)). A common way courts have devised to award the victim of an infringement the "loss in the fair market value of the copyright" is to award the plaintiff what would have been a reasonable license

fee had the defendant gone through the proper channels to receive permission to use the copyrighted work. *See On Davis*, 246 F.3d at 161 ("[C]ompensat[ing] a plaintiff for the defendant's failure to pay for the reasonable value of what the defendant took."); *see also Mackie v. Risser*, 296 F.3d 909, 914 (9th Cir. 2002) (approving recovery of license fee). The Supreme Court has also suggested that this is an appropriate measure of damages. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985). The Court does not consider what the owner would have charged, however, to be a reasonable license fee. *See On Davis*, 246 F.3d at 166. The question is always what the fair market value for the copyrighted work is. *Id.* Thus, "the owner must show that the thing taken had a fair market value." *Id.* As the U.S. Circuit Court of Appeals pointedly stated:

> [T]he fair market value to be determined is not of the highest use for which plaintiff might license but the use the infringer made. Thus, assuming the defendant made infringing use of a Mickey Mouse image for a single performance of a school play before schoolchildren, teachers and parents with tickets at $3, the fair market value would not be the same as the fee customarily charged by the owner to license the use of this image in a commercial production.

*Id.*, fn. 5.

Furthermore, while courts have stated that the amount of damages should not be based on "undue speculation,"*Abeshouse v. Ultragraphics, Inc.*, 752 F.2d 467 (2d Cir. 1985)), "finding the fair market value of a reasonable license fee may involve some uncertainty." *On Davis*, 246 F.3d at 166. "[U]ncertainty will not[, however,] preclude recovery of actual damages if the uncertainty is as to amount, but not as to the fact that actual damages are attributable to the infringement." 4

Nimmer § 14.02 [A], at 14-12 ; *see also* II Paul Goldstein, *Copyright* § 12.1.1, at 12:6 (2d ed. 2000) ("Once the copyright owner shows a connection between infringement and damage, uncertainty about the amount of damages will not bar an award.").

Meanwhile, an award of attorney's fees is left to the district court's discretion. *See Positive Black Talk*, 394 F.3d at 380. Nevertheless, it "is the rule rather than the exception and should be awarded routinely." *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994) (*quoting Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985)). For purposes of this statute, "the prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989) (*referring to Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Determining which party is the prevailing one, however, does not control the awarding of attorney's fees. *See Warner Bros. Inc.* 877 F.2d at 1127. "In the district court's discretion, fees need not be awarded if the award would not vindicate underlying statutory policies or it would be inequitable." *Id.* (*referring to Lieb v. Topstone Industries*, *Inc.*, 788 F.2d 151, 155 (3d Cir. 1986); *see also McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987)).

Although the Supreme Court has noted that "[t]here is no precise rule or formula" to determine when such awards are warranted, it has given its approval to a non-exclusive list of factors that may be used by a district court in guiding its discretion. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994); *see also Positive Black Talk*, 394 F.3d at 381. Among the factors included are: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of

compensation and deterrence." *Id.* Moreover, other district courts have considered additional factors in determining whether an award for attorney's fees is warranted and reasonable. *See Latin American Music Co., Inc. v. Archdiocese of San Juan of the Roman Catholic and Apostolic Church*, 488 F.Supp.2d 33 (D.P.R. 2007); *see also Arista Records v. Tysinger*, 867 F.Supp. 345 (M.D.N.C. 1994).

Nevertheless, the Court is stripped of its discretion to award statutory damages and attorney's fees when the copyright has not been preregistered. *See* 17 U.S.C. § 412. The Copyright Act clearly states: "In any action under this title [. . .] *no award of statutory damages or of attorney's fees*, as provided by sections 504 and 505, shall be made for - - (1) any infringement of copyright in an unpublished work commenced before the effective date of registration; or (2) *any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.*" *Id.* (emphasis added). This has also been applied in cases involving default judgments. *See Getaped.com, Inc. v. Cangemi*, 2001 WL 1606732 (S.D.N.Y.) (Statutory damages and attorney's fees were denied in default judgment case because the alleged infringement occurred before registration); *see also Homkow v. Musika Records, Inc.*, 2008 WL 508597 (S.D.N.Y.) (The District Court affirmed a Magistrate Judge's recommendation that a default judgment providing only for injunctive relief be entered against Defendants because 17 U.S.C. §412 presented "an insurmountable obstacle to Plaintiff's recovery of attorney's fees[.]") A copyright owner whose work has been infringed before registration would still, however, be entitled to the remedies ordinarily available in infringement cases: an injunction on terms the court considers fair, and his

actual damages plus any applicable profits not used as a measure of damages. *See* 17 U.S.C. § 504.

**III. ANALYSIS**

Here, the Court finds that Plaintiff has sufficiently established that Defendant did unlawfully, willfully, and for commercial or financial gains, infringe on his copyrighted works. As the record stands, however, Plaintiff provides no evidence to support his claim that industry standards dictate that songs and tracks are licensed for DVDs at ten to twenty-five cents each, per DVD. Moreover, Plaintiff gives no indication as to how he reached his estimation that 15,000 of Defendant's DVD's have been sold. These claims are completely unsubstantiated - not even by sworn affidavit. Nevertheless, as the law clearly states that the victim of copyright infringement is entitled to damages, regardless of whether these can be easily calculated, this Court is prepared to award what it deems to be reasonable actual damages once Plaintiff has further briefed the Court on what the industry practice is in licensing songs and tracks to be used in DVDs.

Finally, 17 U.S.C. § 412 bars the Court from awarding attorney's fees when the copyrighted work was not registered at the time of infringement. In this case, the date of effective registration coincides with the date on which Plaintiff notified Defendant of its copyright infringement (July 8, 2005). Rec Doc. 1-2 at 4-7. Furthermore, registration did not occur within the three month grace period given after the work's first publication. Thus, this Court is unable to grant Plaintiff's claim for attorney's fees.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that plaintiff's Motion for Default Judgment is GRANTED. Rec. Doc. 23. Default judgment shall be entered against defendant.

**IT IS FURTHER ORDERED** that Plaintiff submit evidence, no later than September 10, 2009 as to what are the industry standards and the fair market value of a reasonable license fee in regards to songs and tracks to be used in a DVD.

New Orleans, Louisiana, this 10th day of August, 2009.

							_____
							**HELEN G. BERRIGAN**
							**U.S. DISTRICT COURT JUDGE**